**BERRY APPLEMAN & LEIDEN**
Jeff Joseph (CO Bar No. 28695) (*pro hac vice pending*)
2400 N. Glenville Drive
Richardson, Texas 75082
(720) 273-4647
Email:  jjoseph@bal.com

*Attorney for Plaintiff*
Student Doe #1

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Student DOE #1 | Case No. |
| Plaintiff, | |
| v. | **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Donald J. TRUMP, in his official capacity, President of the United States of America; | **POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |
| William JOYCE, in his official capacity as ICE Enforcement and Removal Operations New York Field Office Director; | |
| Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and | Request for Declaratory and Injunctive Relief |
| Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; | |
| Defendants. | |

## NOTICE OF MOTION

1.    Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiff hereby moves this Court for an order enjoining Defendants Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), William Joyce, in his official capacity as Field Office Director, ICE Enforcement and Removal Operations New York Field Office, and Donald J. Trump in his official capacity as President of the United States of America from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their Student and Exchange Visitor Information System ("SEVIS") record, or the unlawful revocation of their F-1 visa. Such enforcement action includes: detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings and removing Plaintiff from the United States pending these proceedings.

2.    Plaintiff, through this temporary restraining order, also seeks prohibitive injunctive relief restoring the Plaintiff to the status quo as it existed prior to the unlawful termination of their SEVIS status, and declaring that the Defendants continued action of terminating their SEVIS status be found unlawful and without legal force to deprive Plaintiff of their valid student nonimmigrant status and work authorization during these proceedings. Plaintiff further seeks to maintain the status quo in their case whereby they continue to be considered in status, so that they may continue to work pursuant to their valid F-1 student visa (and their underlying valid I-20) which existed immediately prior to Defendants' unlawful actions, and also that they may seek the concomitant benefits of that valid status

such as the legal eligibility to extend Optional Practical Training, Curricular Practical Training, a change of status to another non-immigrant visa status, or transfer to another qualified institution while this litigation remains pending.

3.  Furthermore, through the issuance of a subsequent preliminary injunction, Plaintiff seeks mandatory injunctive relief, in addition to the relief described above, but also to vacate and set aside the termination of their SEVIS record, and to reinstate or reissue their I-20 form retroactively to the date it was terminated.

4.  The reasons in support of this Motion are set forth in the accompanying Memorandum of Points and Authorities. This Motion is based on the concurrently filed Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act and the Declaratory Judgment Act, as well as the declarations of Plaintiff and undersigned counsel. As set forth in the Points and Authorities in support of this Motion, Plaintiff raises that they warrant an emergency temporary restraining order due to their weighty liberty interests under the Due Process Clause of the Fifth Amendment in remedying the unlawful revocation of their SEVIS status, to preserve their status quo ability to pursue their education and relevant employment opportunities pursuant to that education, and to prevent against any further enforcement action by the government stemming from these unlawful SEVIS revocations.

5.  WHEREFORE, Plaintiff prays that this Court grant their request for a temporary restraining order enjoining Defendants from detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings, as well as an order that Defendants' revocation of Plaintiff's SEVIS account

be declared unlawful and without legal force, which is necessary to maintain the status quo in their case such that they may continue to work pursuant to their F-1 student status while this litigation remains pending. The only way to ensure that Plaintiff is not unlawfully detained, transferred, or removed in violation of their due process rights is an ex-parte temporary restraining order from this Court.

Dated 04/23/2025                              Respectfully Submitted:

/s/ Jeff Joseph
Jeff Joseph
Berry Appleman & Leiden
2400 N. Glenville Drive
Richardson, TX  75082
(720) 273-4647
jeff@immigrationissues.com
*pro hac vice pending*

Gregory P. Copeland
Law Office of G P Copeland
6565 Spring Brook Avenue, Suite 8, #195
Rhinebeck, NY 12572
Tel.: (845) 280-6446
g@gpcopeland.com

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................2

II.     STATEMENT OF FACTS AND CASE ...........................................................5

III.    LEGAL STANDARD ........................................................................................8

IV.     ARGUMENT ......................................................................................................9

        A. PLAINTIFF WARRANTS A TEMPORARY RESTRAINING ORDER ...........9

        1.   Plaintiff is Likely to Succeed on the Merits of Their Claims That
             Defendants' Actions Violated the Administrative Procedure Act and
             Plaintiff's Due Process Rights ..............................................................9

        2.   Plaintiff will Suffer Irreparable Harm Absent Injunctive Relief ...............22

        3.   The Balance of Equities and the Public Interest Favor Granting the
             Temporary Restraining Order..............................................................26

        4.   Plaintiff Has Complied with the Requirements of Rule 65,
             Fed.R.Civ.P………………………………………………………………..27

V.      CONCLUSION AND PRAYER FOR RELIEF ..............................................28

## TABLE OF AUTHORITIES

**Cases**

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ...................................... 27

*Armstrong v. Manzo*, 380 U.S. 545 (1965) .......................................................................... 22

*Baldwin v. Hale*, 68 U.S. 223 (1864) .................................................................................... 22

*Borden v. United States*, 593 U.S. 420 (2021) ..................................................................... 12

*Fuentes v. Shevin*, 407 U.S. 67 (1972) .................................................................................. 22

*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City,*
415 U.S. 423 (1974) ............................................................................................................. 9

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ........................................................... 27

*Jie Fang v. Dir. United States Immig. & Customs Enf't*, 935 F.3d 172 (3d Cir. ........... 12, 13, 17

*LaRouche v. Kezer,* 20 F.3d 68, 72-73 (2d Cir. 1994) ............................................................. 8

*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) ................................................................... 26

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................................................... 22

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ............................................................... 27

*Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024) ...... 13

*Preminger v. Principi*, 422 F.3d 815  (9th Cir. 2005)............................................................. 27

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) .................................................. 27

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....................................................... 8

*Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) ...................................................................... 26

**Statutes**

5 U.S.C. § 706(2)(A)........................................................................................................ 17, 18

5 U.S.C. § 706(2)(B) ............................................................................................................ 18

8 U.S.C. § 1182(d)(3) ........................................................................................................... 12

8 U.S.C. § 1201(i) ................................................................................................................. 13

8 U.S.C. § 1227(a)(1)(B) ....................................................................................................... 13

8 U.S.C. § 1227(a)(1)(C)(i) ................................................................................................... 13

8 U.S.C. § 1227(a)(4)(C)(i) ................................................................................................... 13

8 U.S.C. § 1252(a)(1)............................................................................................................ 13

8 U.S.C.§ 1101(a)(15)(F)(i) .................................................................................................. 10

Oregon Rev. Stat.§ 161-615(2) ............................................................................................... 7

Oregon Revised Statutes § 163-190......................................................................................... 7

USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001 .............................................. 10

**Other Authorities**

Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)........ 13

ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010) ........................................ 12

**Rules**

Fed. R. Civ. P. 65(b) ..........................................................................................................ii, 9

**Regulations**

8 C.F.R. § 1003.18(d)(ii)(B)................................................................................................. 13

8 C.F.R. § 103.8 ................................................................................................................... 15

8 C.F.R. § 214.1(d) ................................................................................................... 12, 13, 18

8 C.F.R. § 214.1(g) ......................................................................................................... 11, 18

8 C.F.R. § 214.2(f) ..................................................................................................... 10, 11, 18

8 C.F.R. § 214.3(g)(2) ........................................................................................................... 11

8 C.F.R. § 274a.14 ................................................................................................................ 14

8 C.F.R. § 274a.14(b)............................................................................................................ 14

8 C.F.R. §§ 214.1(e) ........................................................................................................ 11, 18

8 C.F.R. §§ 214.1(e)–(g)...........................................................................................................11

## I. <u>INTRODUCTION</u>

Plaintiff, Student Doe #1, by and through undersigned counsel, hereby files this motion for a temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their SEVIS record or the unlawful revocation of their F-1 visa. Such enforcement action includes detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings. Plaintiff also seeks prohibitive injunctive relief restoring the Plaintiff to the status quo as it existed prior to the unlawful termination of their SEVIS status, and an order declaring that the Defendants' actions of terminating their SEVIS status is unlawful and without legal force to deprive Plaintiff of their valid student nonimmigrant status and work authorization during these proceedings. Plaintiff further seeks to maintain the status quo in their case whereby they continue to be considered in valid F-1 visa status, so that they may continue to work pursuant to their valid F-1 student status (and their underlying valid I-20) which existed immediately prior to Defendants' unlawful actions, and also that they may seek the concomitant benefits of that valid status such as the legal eligibility to extend Optional Practical Training, Curricular Practical Training, a change of status to another non-immigrant visa status, travel and reentry on a valid I-20, and transfer to another qualifying institution, while this litigation remains pending.

Plaintiff is a graduate of a prestigious Chicago-based University, having obtained both their bachelor's and their master's degree in lawful F-1 visa status. Prior to being laid off from their employment due to their SEVIS termination, Plaintiff was working for an employer

pursuant to their valid and unexpired Optional Practical Training work authorization valid until May 2025. Until Plaintiff's SEVIS record was terminated, Plaintiff planned on extending his OPT for an additional two years until May 2027. At all times they are and were maintaining their status by complying with all the requirements of their nonimmigrant student visa, and the requirements of the educational institution in which they are enrolled. They are one of approximately 4,700 F-1 students nationwide whose SEVIS records, like that of Plaintiff here, have been abruptly and unlawfully terminated by the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") since approximately March 25, 2025, in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis.[1]

There are two distinct but related problems with ICE's termination of the SEVIS record. First, the grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record, and neither do the underlying facts referred to by ICE as they do not amount to any violation of the student's lawful status. Second, ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked, ICE is not authorized to terminate Plaintiff's F-1 student status. Here, Plaintiff has been in full compliance with the terms of their F-1 status and has not engaged in any conduct that would warrant termination of their status.

---

[1] Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing,* Bloomberg, (April 15, 2015) available at: https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing;
Inside Higher Education, *International Student Visas Revoked,* (April 23., 2025), available at: https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked

Notice of Motion for Ex Parte TRO/PI

Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiff, into abandoning their studies and post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. For example, on March 5, 2025, the Department of State ("DOS") informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[3]

Other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all.[4] On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. There have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[5] On information and

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.

[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488

[4] *See, e.g.,* Bea Lunardini, *UF International Student Detained By Immigration Agents Now Back in Columbia*, WUFT/PBS/NPR, April 9, 2025, *available at* https://www.wuft.org/fresh-take-florida/2025-04-09/uf-international-student-detained-by-immigration-agents-now-b ack-in-colombia

[5] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html

belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved far from their home, school/employer and community, to a detention facility in Texas or Louisiana the day before or day of their bond hearing in immigration court.

If ICE believes a student is deportable for having violated their visa status, or any other lawful reason, it has the authority to initiate removal proceedings and make its case in immigration court. ICE cannot, however, misuse SEVIS to circumvent the law, strip students of status, deprive them of jobs and livelihoods, and drive them out of the country without process. ICE similarly cannot engage in retaliatory arrests and transfers – without legal basis if the SEVIS termination was unlawful -- to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

Plaintiff meets the standard for a temporary restraining order. They will suffer immediate and irreparable harm absent an order from this Court enjoining Defendants from taking further unlawful action stemming from the unlawful revocation of their SEVIS record—including arrest and detention, being transferred out of the jurisdiction of this District, and removal from the country—during the pendency of these proceedings. Since holding federal agencies accountable to constitutional demands is in the public interest, the balance of equities and public interest also tips strongly in Plaintiff's favor.

## II.    STATEMENT OF FACTS AND CASE

As mentioned above, Plaintiff is in lawful F-1 visa status by complying with all the requirements of their nonimmigrant student visa, and the requirements of the educational institution in which they are enrolled. Since April 8, 2025, their SEVIS record was abruptly and

unlawfully terminated by ICE without any notice or basis for the termination. Additionally, Plaintiff's F-1 visa was revoked by the Department of State on April 10, 2025.

SEVIS is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses. On approximately April 8, 2025, SEVP terminated Plaintiff's SEVIS record and marked it as "Other – Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated" with no citation to any provision of law that indicates a basis for not maintaining status, or other facts that indicate a lack of status, or an actual violation of their status. Although Plaintiff has had contact with law enforcement in Portland, Oregon, they lack any criminal conviction or conduct that violates the terms of their F-1 status or otherwise renders them deportable. Furthermore, in 2021, when Plaintiff applied for his last F-1 visa at the U.S. Consulate in Guangzhou, the Consulate requested the records from this criminal case as well as his criminal record from China. Plaintiff complied with this request, and provided the records from the criminal case to the Consulate to demonstrate the case was never prosecuted. After over 2 months of administrative processing, the Consulate approved the visa.

Plaintiff is residing in the State of New York and is currently working for an employer as a drafting architect after graduating with a master's degree from a Chicago based University, which is authorized through their F-1 student status.

Plaintiff first came to study in the United States on a student visa in 2015 when they arrived in Portland Oregon to begin pursuing their bachelor's degree at a college or university. Subsequently, Plaintiff obtained a new F-1 visa and transferred to a University in Chicago to being their master's program. After graduation, the Plaintiff settled in New York and has resided in New York since that time.

Notice of Motion for Ex Parte TRO/PI

At all times, Plaintiff has complied with all the requirements of their visa and of the educational institution in which they are enrolled.

Plaintiff has no criminal history. His only encounter with law enforcement was for a minor misdemeanor in Portland, Oregon on June 13, 2017. He was charged under Oregon Revised Statutes § 163-190 with Class A Misdemeanor Menacing. The maximum potential penalty for Class A misdemeanor menacing is 364 days in jail. Oregon Rev. Stat.§ 161-615(2). Although Plaintiff was charged with the misdemeanor menacing charge in municipal court in Portland, Oregon, they were never convicted because the prosecutor dismissed the charges. The dismissed misdemeanor menacing persons charge does not render Plaintiff inadmissible to or deportable from the United States. In fact, Plaintiff disclosed this offense on his visa application in 2021. He was requested to provide the criminal records from the Portland case as well as his criminal record in China. After two months of administrative processing and consideration of the criminal records, the Department of State Consulate in Guangzhou, approved the visa and the Plaintiff entered the United States. As such, the issue of the Plaintiff's inadmissibility has been fully resolved. The dismissed misdemeanor menacing offense does not render Plaintiff inadmissible to or deportable from the United States.

As Plaintiff has been approaching the final months of their Optional Practical Training, they have been actively pursuing a change of status to H-1B and or other immigration opportunities in the United States. Prior to the SEVIS termination, they had a job with a company that was willing to sponsor them for the H-1B lottery as well as other possible immigration avenues. However, given the SEVIS termination, Plaintiff was terminated from the job and the employer has paused all immigration activity or sponsorship in their case.

As stated above, ICE's en masse SEVIS terminations have created havoc and uncertainty for schools as well. Plaintiff's school was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status.

Since they received notice of their SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. They are facing severe economic pressures from the loss of employment and the inability to seek alternative employment. They are terrified to leave the United States and yet feel trapped within the United States. Their work authorization will expire in less than one month, but they are unable to file for an extension of work authorizing status. They are unsure of what will happen to them, and they fear the effect incarceration or deportation would have on their mental health.

Intervention from this Court is therefore required to ensure that Plaintiff does not continue to suffer irreparable harm.

## III. LEGAL STANDARD

Plaintiff is entitled to a temporary restraining order where they establish that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Second Circuit has held that a movant for preliminary equitable relief need not always show a probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and how that the balance of equities weigh heavily in favor of granting the stay. *LaRouche v. Kezer,* 20 F.3d 68, 72-73 (2d Cir. 1994). As set forth in more detail below, Plaintiff overwhelmingly satisfies this standard.

# IV. **ARGUMENT**

## A. PLAINTIFF WARRANTS A TEMPORARY RESTRAINING ORDER

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in the absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). As explained above, Plaintiff's SEVIS record was abruptly and unlawfully terminated by ICE in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis. Given the actions related to similarly situated international students, Plaintiff is at serious and immediate risk of further unlawful enforcement action by ICE—including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States. The unlawful revocation of their SEVIS record without notice or opportunity to respond, and without legal basis, clearly violated Plaintiff's due process rights and was otherwise arbitrary and capricious. Plaintiff has already suffered irreparable injury to their well-being and their life as a graduate student in the United States.

### 1. Plaintiff is Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiff's Due Process Rights

Plaintiff is likely to succeed on their claim that, by abruptly revoking Plaintiff's SEVIS record without any lawful or valid basis, and without any notice or an opportunity to respond, Defendants acted in violation of their own regulations, arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), and further violated Plaintiff's procedural due process rights.

A nonimmigrant visa printed in a passport provides a basis for a noncitizen's admissibility into the United States but does not control their continued lawful stay in the United States after they are admitted. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once a holder of an F-1 visa is admitted in F-1 status, a student is granted permission to remain in the United States not for a fixed period time, as is the case for other nonimmigrant visa holders, but rather for the duration of status (annotated as D/S). That status endures (separate from the validity of the visa itself) as long as they continue to meet the requirements established by the regulations governing their visa classification at 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

To obtain an F-1 visa, the school at which the student will study issues a form I-20 to the student confirming their attendance and enrollment in the school, with an expected duration of study. Often, the form I-20 is updated as the student's circular progress is updated, but in substance and duration. If there is a valid I-20 issued to the student by the school, then the student is considered to be maintaining their lawful status.

Before 2001, there was no centralized databased to track student visa holders in the United States, as it is not inherent to the legal ability of a student to maintain status. After 2001, Congress created the SEVIS system to track the status of nonimmigrant visa holders admitted for" duration of status."[6] SEVIS is a centralized database maintained by the SEVP within ICE, and it is used to manage information on nonimmigrant students and exchange visitors and to track their compliance with the terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student fails to maintain status.

---

[6] USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001.

SEVIS termination is governed by SEVP policy and regulations.[7] SEVIS termination can only be based on a student's failure to maintain status.[8]

DHS regulations distinguish between two separate ways a student may fail to maintain status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

With respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Arrests that do not result in any conviction, and minor infractions or misdemeanor offenses, do not meet this regulatory threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of

---

[7] *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 16, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons

[8] *See id.*

physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[9]

Accordingly, the existence of an arrest (or even minor conviction) does not constitute a basis for SEVIS termination. Likewise, the revocation of a *visa* does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country, and the SEVIS record is terminated. However, the SEVIS record may not be terminated because of a visa revocation *after* a student has already been admitted into the United States, since status is not terminated by visa revocation, and the student is permitted to continue the authorized course of study.[10]

ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[11] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is

---

[9] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).
[10] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf
[11] *Id.*

Notice of Motion for Ex Parte TRO/PI

terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[12]

While a visa revocation *can* be charged as a ground of deportability in removal proceedings before an immigration judge, such alleged deportability can be contested in such proceedings.[13] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status.[14] Only when a final removal order is entered would an individual's status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status). Moreover, there is no provision for termination of SEVIS based on law enforcement contact.

The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[15] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.[16]

---

[12] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation
[13] *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[14] 8 C.F.R. § 1003.18(d)(ii)(B).
[15] *See Jie Fang v. Dir. United States Immig. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019); *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024).
[16] *See Fang*, 935 F.3d at 185.

Notice of Motion for Ex Parte TRO/PI

Additionally, SEVIS termination does not constitute termination of any work authorization that an F-1 student may have pursuant to Optional Practical Training. The regulations make clear that the sole relevant basis for the termination of a nonimmigrant's employment authorization is as set forth in 8 C.F.R. § 274a.14. Although 8 C.F.R. § 274a.14(a) sets forth various bases upon which employment authorization can be automatically revoked, none of them include the termination or closure of a foreign student's SEVIS record, nor the termination of their student status. 8 C.F.R. § 274a.14(b) permits employment authorization to be revoked if "Prior to the expiration date, when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown; or  Upon a showing that the information contained in the application is not true and correct."

Even if the maintenance of the employment authorized Plaintiff student status was a condition upon which employment authorization was granted and has not been met or no longer exists, this is solely because of the unlawful actions of the Defendants, there is no good cause for such a revocation, and there has been no showing that the information contained in the employment authorized Plaintiff's application was not true and correct.

Even if any of these grounds applied to the employment authorized Plaintiff, they cannot be a basis for revocation of employment authorization unless the director "serve(s) written notice of intent to revoke the employment authorization. The notice will cite the reasons indicating that revocation is warranted. The alien will be granted a period of fifteen days from the date of service of the notice within which to submit countervailing evidence." 8 C.F.R. § 274a.14(b).

8 C.F.R. § 103.8 provides for the following forms of service:
> Types of service--
> **(1)** Routine service. Routine service consists of mailing a copy by ordinary mail addressed to a person at his last known address.

(**i**) Routine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address, or

(**ii**) If so requested by a party, advising the party of such notice by electronic mail and posting the decision to the party's USCIS account.

(**2**) Personal service. Personal service, which shall be performed by a Government employee, consists of any of the following, without priority or preference:

(**i**) Delivery of a copy personally;

(**ii**) Delivery of a copy at a person's dwelling house or usual place of abode by leaving it with some person of suitable age and discretion;

(**iii**) Delivery of a copy at the office of an attorney or other person, including a corporation, by leaving it with a person in charge;

(**iv**) Mailing a copy by certified or registered mail, return receipt requested, addressed to a person at his last known address; or

(**v**) If so requested by a party, advising the party by electronic mail and posting the decision to the party's USCIS account.

The sole notice of the "termination" (or, more properly, purported revocation) of the employment authorized Plaintiffs' employment authorization was by the messages received as a result of the SEVIS termination. No other notice was received that would comport with the regulations.

Significantly, the Defendants have taken the position under penalty of perjury in litigation in other districts on this issue that terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States, and that the statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record.[17] This is correct as a matter of law, of course, but ICE takes a different position in both the

---

[17] Exhibit E, Affidavit of Andre Watson, *Deore v. Noem*, 2:25-cv-11038-SJM-DRG (E.D. Mich Southern Division) ECF No.14-3 at para. 22.

communications that went out to students as well as its own public-facing messaging on SEVIS

itself.  For example, the Department of Homeland Security Website specifically states:

> When an F-1/M-1 SEVIS record is terminated, the following happens:
> - Student loses all on- and/or off-campus employment authorization.
> - Student cannot re-enter the United States on the terminated SEVIS record.
> - Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.[18]

Additionally, in a letter to Senator Grassley, ICE stated that the impact of a SEVIS

termination is:

> SEVIS records serve as an indicator of a possible immigration status violation. SEVIS record terminations and cancellations are data entry actions in SEVIS that raise a flag indicating that an individual's status requires further investigation by the agency. An individual's SEVIS record can be terminated for a number of reasons, not all of which are negative. For instance, a student's SEVIS record will be terminated if the individual changes status and is no longer a nonimmigrant student. A certified school's designated officials can also terminate a student's SEVIS record when a student has been authorized for early withdrawal from a program of study. Such termination reasons are not typically indicative of a status violation. **Conversely, other termination reasons implicate a nonimmigrant student's failure to meet the requirements of his or her nonimmigrant student status**. For example, a SEVIS termination can result from a student's failure to enroll in a full course of study, unauthorized employment, or expulsion or suspension from an SEVP-certified school. Again, a SEVIS termination for any of these reasons requires further investigation before the Agency determines whether an individual has violated his or her status and to initiate removal proceedings.[19]

---

[18] Department of Homeland Security, Study in the States, *Effects of Termination* (last visited April 16, 2025) available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student

[19] Letter to Senator Charles Grassley, U.S. Immigration and Customs Enforcement (June 1, 2018) available at https://www.judiciary.senate.gov/imo/media/doc/2018-0601%20DHS%20to%20CEG%20-%20Student%20and%20Exchange%20Visitor%20Program.Pdf.

Notice of Motion for Ex Parte TRO/PI

And, in other litigation, the Defendants have taken the inconsistent position that SEVIS termination means that students are no longer in valid status. "Since your SEVIS record has been terminated, you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. citizenship and immigration Services (USCIS) or depart the United States immediately." *Jie Fang v. Director USCIS,* 935 F.3d at 177. Defendants are simultaneously messaging that students must leave the United States immediately to avoid removal while at the same time declaring under penalty of perjury that SEVIS termination has no direct legal effect on status.

Here, Defendants' actions in abruptly and unlawfully terminating Plaintiff's SEVIS record violated both the APA and Plaintiff's due process rights.

First, Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

As set out above, Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination. This is true even though the Department of State ("DOS") has revoked Plaintiff's F-1 visa, as the revocation of an F-1 visa is not a basis for SEVIS termination. Specifically, Plaintiff has not failed to maintain status that would warrant SEVIS termination pursuant to the controlling regulations. 8 C.F.R. § 214.2(f). Based on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS. 8 C.F.R. §§ 214.1(e)–(f). While Plaintiff has had minimal law enforcement contact, they do not have any conviction for a crime of violence with a

potential sentence of more than a year. 8 C.F.R. § 214.1(g). Moreover, ICE cannot unilaterally terminate their SEVIS records because the relevant conditions for such termination do not exist: Plaintiff was not previously granted a waiver under INA § 212(d)(3) or (4) that has since been revoked, a private bill to confer lawful permanent residence relevant to the Plaintiff has not been introduced in Congress, and ICE has not otherwise published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). What is more, Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts, which may have or may have not been found, and the decision made.

Accordingly, Defendants' actions in abruptly terminating Plaintiff's SEVIS record— actions which had no basis in the law—were arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants have therefore violated the APA.

Second, under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations, as set out above. Because these regulations

impose *mandatory* constraints on agency action, and because SEVIS registration is necessary for

a student to remain enrolled as an international student and continue any OPT employment,

Over 40 courts have found that similarly situated Plaintiffs have a constitutionally

protected property interest in their SEVIS registrations and have granted TROs.[20]

---

[20] *See Ajugwe v. Noem,* U.S. District Court, Middle District of Florida, 8:25-cv-982 (ECF 7)(ordering Plaintiff SEVIS status restored, prohibiting termination of SEVIS absent a reason under 8 C.F.R. §214.1(d) and absent a hearing; and prohibiting the arrest, detention or transfer of the Plaintiff or the initiation of removal proceedings, declaring that Plaintiff can continue employment and prohibiting any retaliation against the school); *BK et al v. Noem,* US District Court, Western District of Michigan Southern Division, 1:25-cv-00419 (ECF 19); *Bejugam v Lyons*, US District Court, Northern District of Alabama, 2:25-cv-537 (ECF 17) (extending the court's TRO of April 11, 2025 enjoining defendant Lyons from effectuating ICE's termination of plaintiff's SEVIS record and F-1 status through April 22, 2025, the date of the scheduled evidentiary hearing in the case); *Beyhaqi v. Noem,* US District Court for the Southern District of Texas, 4:25-cv-01788 (ECF 7)(prohibiting defendants from terminating SEVIS status, and reinstating SEVIS status effective April 10, 2025, *C.S., et al., v. Noem, et al.*, 2:25-cv-00477, ECF No. 22, W.D. Pennsylvania, April 15, 2025 (granting the TRO in part, ordering the defendants from upsetting the status quo as to "instituting, commencing, or beginning deportation processes" against the plaintiffs, and denying the TRO in part, as to any governmental agency or officer altering plaintiffs' "status"/information in SEVIS); *Chatwani v Noem et al.,* US District Court, Northern District of Illinois, 25-cv-4024 (ECF 10)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction); *Chen v. Noem,* US District Court Southern District of Indiana, 1:25-cv-00733 (ECF 17)(setting aside the termination of SEVIS status, and enjoining the defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of status); *Chen et al v Noem,* US District Court, Northern District of California, 25-cv-3292 (ECF 18)(enjoining defendants from imposing any legal consequences as a result of the termination); *Doe v. Trump,* US District Court for the District of Massachusetts, 25-cv-10135 (*Doe v. Trump, et al,* 4:25-cv-03140, ECF No. 16, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants from arresting or incarcerating plaintiff pending resolution of the proceedings or transferring plaintiff outside the jurisdiction of the judicial district). *Doe 1 v Trump*, US District Court, District of New Jersey, 25-cv-2825 (ECF 13)(granting the TRO and ordering defendants to restore plaintiff's SEVIS record and status and set aside defendants' termination of plaintiff's SEVIS status and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of defendants' decision to terminate plaintiff's SEVIS records, including arresting, detaining, or removing plaintiff from the court's jurisdiction, or ordering the same, without providing adequate notice to the court and to plaintiff's counsel, as well as sufficient time to contest any such enforcement action); *Doe v Noem,* US District Court, Eastern District of California, 25-cv-1103 (ECF 13) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's SEVIS record; requiring defendants to set aside their SEVIS record termination determination; prohibiting defendants from detaining or removing plaintiff based on the SEVIS termination; and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record); *Doe v Noem,* US

District Court, Western District of Washington, 25-00633 (ECF 16) (granting the TRO and ordering defendants to restore the plaintiff's F-1 student record and I-20 in SEVIS and to set aside plaintiff's April 7, 2025 F-1 student record and I-20 termination, and enjoining defendants from terminating plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f), from detaining or transferring plaintiff out of the court's jurisdiction, or ordering the detention or transfer of plaintiff out of the court's jurisdiction, as a result of the termination of his F-1 student record or I-20 in SEVIS on April 7, 2025, and from initiating removal proceedings against or deporting plaintiff on the basis of the April 7, 2025 termination of his F-1 student record or I-20 in SEVIS); *Dogan V Noem*, US District Court, District of Columbia, 25-cv-01130 (ECF 7) (granting the TRO in part and denying in part without prejudice, ordering the defendant to treat the plaintiff as it would have treated the plaintiff prior to the defendant's termination of her SEVIS record, preserving the status quo until a further hearing requiring official testimony from a representative of DHS who can make authoritative representations to the court on behalf of the agency explaining to what impact the agency's SEVIS termination has on the lawful status of students, including the plaintiff, who are studying in the United States, if such terminations were not intended to have the impact that educational institutions are interpreting the agency's action to have (i.e., revocation of SEVIS-terminated students' authorization to lawfully continue their studies or training in the United States), and why the agency has not taken action to communicate that misalignment with the educational institutions hosting these students); *Hinge_V_Lyons* US District Court, District of Columbia 25-cv—1097 (ECF 10, 14)(granting the TRO in part and denying the TRO without prejudice in part, and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying the plaintiff's record in SEVIS solely on the basis of his arrest on July 3, 2024, for a violation of Texas Transportation Code violation that was subsequently dismissed); *Isserdasani v. Noem*, US District Court for the Western District of Wisconsin Case No. 3:25-cv-00283 (ECF 7) (granting the TRO in part, enjoining defendants from terminating plaintiff Isserdasani's F-1 student status records from SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records, including detaining him, and reserving in part as to plaintiff Khademi pending additional briefing on venue); *Jane Doe 1 v Bondi*, US District Court, Northern District of Georgia, 25-cv-01998 (ECF 23) (granting TRO for a period of 14 days and ordering defendants to reinstate plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025); *Jin v Noem*, US District Court, District of Minnesota, 25-cv-1391 (ECF 13) (granting the TRO, ordering the defendants to temporarily set aside their determination to classify plaintiff's F-1 student status as terminated and to reinstate plaintiff's student status in SEVIS backdated to April 8, 2025, and temporarily enjoining defendants from taking any further action to terminate plaintiff's student status and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records, including detaining him, or deporting him); *Lui v. Noem et al.*, US District Court for the District of New Hampshire, 1:25-cv-00133 (ECF 13) (granting the TRO and temporarily enjoining the defendants from terminating plaintiff's F-1 student status in SEVIS and requiring them to set aside their termination determination.);  *Mashatti v. Lyons*, US District Court, District of Columbia, 25-cv-01100 (ECF 10) 2025 (granting the TRO and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying plaintiff's SEVIS record solely on the basis of the plaintiff's October 2022 arrest for misdemeanor driving while intoxicated for which charges were later dismissed); *Nali v Noem*, US District Court, Northern District of Georgia, 25-cv-03969 (ECF 21)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction); *Okyem v. Noem* US District Court Central District of Illinois, 2:25-cv-02120 (ECF 6)(restoring student status in SEVIS, prohibiting termination unless authorized by 8 C.F.R. §214.1(d) and after a hearing, and prohibiting the arrest, detention or transfer of the Plaintiff outside the jurisdiction of the court and from initiating removal proceedings); *Oruganti v Noem* US District Court, Southern District of Ohio, 25-cv-409 (ECF 7) (granting the TRO and ordering the defendants to reinstate the plaintiff's F-1 student status and SEVIS

Notice of Motion for Ex Parte TRO/PI

record, enjoining defendants from enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of terminating Plaintiff's F-1 student status or SEVIS record, detaining her, or placing her in removal proceedings, and requiring the posting of a bond in the amount of $1.00); *Patel v. Bondi*, US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101 (ECF 16) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's F-1 student status records in SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records); *Raj v United States DHS*, US District Court for the District of Massachusetts, 25-cv-10911 (ECF 4)(limiting relief to enjoining arrest and moving the person outside the jurisdiction); *Roe and Doe v. Noem*, US District Court for the District of Montana, Case No. 25-cv-40 (ECF 9) (granting TRO; ordering defendants to restore plaintiffs' F-1 student status in SEVIS and set aside the F-1 student status termination determination as to the plaintiffs; and enjoining them from: (1) terminating the plaintiffs' student status in SEVIS absent a valid ground as set forth in 8 C.F.R. § 214.1(d) and an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each plaintiff; (2) arresting, detaining, or transferring or ordering the arrest, detention or transfer of either plaintiff out of the court's jurisdiction without first providing adequate notice to both the court and plaintiffs' counsel as well as appropriate time to contest any such action; and (3) initiating removal proceedings against or deporting either plaintiff on the basis of the termination of their F-1 student status); *S.Y., et al., v. Noem, et al.*, 5:25-cv-03244, ECF No. 13, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants for 14 days from arresting and incarcerating plaintiffs pending resolution of the proceedings pursuant to 5 U.S.C. § 705; transferring plaintiffs outside the jurisdiction of the judicial district pending the resolution of the proceedings pursuant to 5 U.S.C. § 705; and imposing any legal effect that otherwise may be caused by the termination of plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas pursuant to 5 U.S.C. § 705; § 706(2)(A), (*Shandilya v. Noem*, US District Court for the Western District of Pennsylvania, Case 25-cv-477 (ECF 22)(limiting TRO relief to enjoining the initiation of removal proceedings, arrest and moving the person outside the jurisdiction); *Sy v Noem*, US District Court, District of Columbia, 25-cv-03244 (ECF 13) (enjoining defendants from imposing any legal consequences as a result of the termination); *Unknown Party v. Trump*, US District Court for the District of Arizona, 25-cv-00175 (ECF 7) (granting TRO and temporarily enjoining defendants from arresting and detaining plaintiff pending the proceedings, transferring plaintiff away from the jurisdiction of the judicial district pending the proceedings, or removing plaintiff from the United States pending the proceedings and ordering that defendants' actions in terminating plaintiff's SEVIS record shall have no legal effect and shall not obstruct plaintiff in continuing to pursue their academic and employment pursuits that plaintiff is authorized to pursue as an international student in F-1 status); *Wu v Lyons*, US District Court for the Eastern District of New York, 25-cv-1979 (ECF 9)(judge Natasha Merle) (granting the TRO pending further order of court, enjoining defendant from terminating plaintiff Wu's SEVIS record and F-1 visa status and ordering defendant to set aside its decision to terminate plaintiffs' visa statuses and plaintiff Wu's SEVIS record); *Zheng v Lyons*, US District Court for the District of Massachusetts, 25-cv-10893 (ECF 8); *Zhou v Lyons*, US District Court, Central District of California, 25-cv-2994 (ECF 19); *Ariwoola v. Noem*, US District Court for the District of South Carolina, 3:25-cv-03313 (ECF 8)(enjoining Defendants from arresting, detaining or transporting Plaintiff outside of the jurisdiction, prohibiting Defendants from giving legal effect to the SEVIS termination and declaring that Plaintiff can continue academic and employment pursuits); *Ajugwe v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00982 (ECF 7); *Daou v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00976 (ECF 11)(ordering Plaintiff SEVIS status restored and setting aside the termination, prohibiting termination absent grounds specified in 8 C.F.R. §214.1(d) and an individualized hearing, prohibiting the arrest, detention or transfer of the plaintiff and the initiation of removal proceedings, and declaring that Plaintiff can continue in his work authorization and prohibiting retaliation against the school); *But see Deore v US Department of Homeland Security*, US District Court, Eastern District of Michigan, 25-cv-11038 (ECF 20) (denying TRO stating "…the balance of factors favors

Defendants terminated Plaintiff's SEVIS record based on improper grounds as no grounds exist that permit such termination, and moreover such termination was without prior notice such that Plaintiff was provided with no opportunity to respond. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'") (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The need for that opportunity to respond, and the resulting prejudice from the absence of that opportunity, is clear here, as Plaintiff would have a valid basis on which to dispute any violation of their status if such a forum existed in which to do so—they could present evidence that they sustained no conviction. The failure to provide notice of the facts that formed the basis for the SEVIS termination was therefore a violation of due process under the Fifth Amendment.

Thus, Plaintiff has established that they are likely to succeed on the merits of their claims.

## 2. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

---

denying the motion at this stage. It is not currently clear that plaintiffs have lost F-1 status or that the SEVIS terminations carry independent consequences. Thus, plaintiffs have not shown a strong likelihood of success on the merits. And the other factors do not sufficiently support granting the motion. Although it is ultimately unclear why DHS would terminate SEVIS records for students who maintain F-1 status, plaintiffs have not, for the reasons explained above, met the standard for the issuance of such an extraordinary remedy."); *Liu v. Noem*, US District Court for the Southern District of Indiana, Case No. 1:25-cv-00716, ECF 24, denying motion for a TRO due to a lack of showing of irreparable harm, because "Plaintiffs have not shown non-speculative harm beyond a potential gap in their educations, which standing alone is generally not irreparable harm.", * 7.   That is not the case here: Plaintiff points to specific non-speculative "loss of a specific job [ ] tied to a specific academic opportunity."

Notice of Motion for Ex Parte TRO/PI

Plaintiff will suffer irreparable harm were a temporary restraining order not issued, as they are currently at risk of further unlawful enforcement action by Defendants—including arrest, detention, being transferred to another jurisdiction, and deportation.

As described above, other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. For example, there have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[21] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court. Their fear and concern of similar actions against them is not hypothetical.[22]

---

[21] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).
[22] *See, e.g.,* Emily Bregel & Prerana Sannappanavar, *Student Visas Revoked in Arizona: ASU Cites 8, UA Refuses to Say*, Arizona Daily Star, April 4, 2025 (*quoting* undersigned counsel as confirming that an ASU master's student was detained and placed into removal proceedings in Florence, Arizona), *available at*

23

Notice of Motion for Ex Parte TRO/PI

Over the past two weeks, visa revocations and SEVIS terminations have shaken campuses across the country and New Jersey, including those at Rutgers, Rowan, Montclair State.[23] The targeted SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

Apart from fearing the very real possibility of further unlawful enforcement action, since receiving the notices of their SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue their employment so that they can advance their career and continue to utilize the education they gained in the United States to benefit the US economy. They are also faced with the lack of ability to change status to another visa status (such as H-1b or O-1 relating to employment in professional capacity or by someone with outstanding abilities) based on employment obtained after graduation from school (as such change of status must be filed while the individual is still in a valid visa status), detention and incarceration by ICE, or ultimately

---

https://tucson.com/news/local/education/college/article_ce8c47d9-d4e0-4131-a117-7638aec0e889.html

[23] Joanna Gagis, *Why Were Student Visas Revoked for International Students in NJ?,* NJ Spotlight News (April 14, 2025) available at: https://www.njspotlightnews.org/video/why-were-student-visas-revoked-for-international-students-in-nj/

Trevor Hughes, *19 State AGs Ask Federal Judge to Block Trump's International Student Visa Cancellations,* USA Today (April 11, 2025) available at:
https://www.usatoday.com/story/news/nation/2025/04/11/attorneys-general-lawsuit-trump-student-visa-cancellations/83048386007/

deportation or otherwise the obligation to leave the country without any ability to return to their studies, employment, career, or community.

Interruption of their optional practical training after a multi-year education in the United States, after years of hard work and investment of time and resources, would be an irreparable injury. Interruption of their employment as part of that education which is often the next step to a successful career based on their education in the United States would be an irreparable injury to the Plaintiff. Being unable to move on to the next step in their education or career such as another work-related visa would be an irreparable injury—because the absence of the ability to continue in valid status would mean having to depart the country. In this case, the circumstances of such departure strongly indicate the absence of any ability to return, especially given that some of the international students around the U.S., and even in New Jersey, previously departed, presented their criminal history, and were granted the very visa of which they are now accused of having violated the terms. These circumstances strongly suggest that, if Defendants' actions are allowed to stand, any other future visa application would be denied under whatever justification the government currently believes requires the revocation of their current status. Therefore, if Plaintiff's SEVIS record is allowed to remain terminated, they will be obligated to leave the country and can expect to never be permitted to return.

Significantly, Plaintiff's work authorization will expire on May 19, 2025, and if Plaintiff can't get his SEVIS status restored before that date, he will be ineligible to extend his work authorization.

Thus, a temporary restraining order is necessary to prevent Plaintiff from suffering irreparable harm by being subjected to further unlawful enforcement action stemming from the unlawful termination of their SEVIS record.

Notice of Motion for Ex Parte TRO/PI

### 3. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order

The balance of equities and the public interest undoubtedly favor granting this temporary restraining order.

First, the balance of hardships strongly favors Plaintiff. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Plaintiff is a student who has maintained their student status, is actively engaged in educational activities, and is lawfully employed, which has been the status quo for multiple years. Plaintiff has never been convicted of a crime. As such, there is no evidence of any sudden change in underlying facts, or imminent harm to the government or public interest in Plaintiff continuing their studies or work for the brief period of time that the instant litigation will take to determine whether they lawfully can continue to do that. Therefore, the government cannot allege harm arising from a temporary restraining order or preliminary injunction ordering it to comply with the APA and the Constitution.

Further, any purported burden imposed by requiring Defendants to refrain from taking further unlawful enforcement action against Plaintiff is, at most, *de minimis* and clearly outweighed by the substantial harm Plaintiff will suffer as long as they continue to be subjected to the very real possibility of further unlawful enforcement action. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

Finally, a temporary restraining order is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the

26

Notice of Motion for Ex Parte TRO/PI

requirements of federal law, especially when there are no adequate remedies available." *Ariz.*

*Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v.*

*Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a temporary restraining order is not entered,

the government would effectively be granted permission to take unlawful and unconstitutional

enforcement action against Plaintiff based on their unlawful SEVIS termination. "The public

interest and the balance of the equities favor 'prevent[ing] the violation of a party's

constitutional rights.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also*

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ("The public interest benefits from an

injunction that ensures that individuals are not deprived of their liberty and held in immigration

detention. . .."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public

interest concerns are implicated when a constitutional right has been violated, because all

citizens have a stake in upholding the Constitution.").

Therefore, the public interest overwhelmingly favors entering a temporary restraining

order and preliminary injunction.

### 4. Plaintiff Has Complied with the Requirements of Rule 65, Fed.R.Civ.P.

Finally, as set forth *supra*, Plaintiff asks this Court to find that they have complied with

the requirements of Rule 65, Fed.R.Civ.P., for the purpose of granting a temporary restraining

order. Pursuant to Rule 65(b)(1), this Court may issue a temporary restraining order without

written or oral notice to the adverse party or its attorney only if a) specific facts in an affidavit . .

. clearly show that immediate and irreparable injury, loss or damage will result to the plaintiff

before the adverse party can be heard in opposition; and 2) the plaintiff's attorney certifies in

writing any efforts made to give notice and the reasons why it should not be required.

Notice of Motion for Ex Parte TRO/PI

Here, Plaintiff respectfully submits that sufficient notice has been given to Respondents since the Chief of the Civil Division of the United States Attorney's Office for the Eastern District of New York has been provided with a copy of the instant motion. *See* Exhibit B, Letter from Jeff Joseph to Richard Hayes dated April 23, 2025. The U.S. Attorney's Office represents Defendants in civil litigation in which they are named as defendants. While proper service may not have been made on Defendant's counsel, for the purpose of Rule 65(b)(1), this Court should find that written notice has, in fact, been provided to the adverse party. In the event this Court finds that not to be the case, it should nevertheless find that the requirements of Rule 65(b)(1)(A) and (B) have been met. *See* Exhibit C, Declaration of Jeff Joseph.

Rule 65(c) also states that the court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Under the circumstances of this case, however, Plaintiff respectfully asks this Court to find that such a requirement is unnecessary, since an order requiring Defendants to refrain from arresting, detaining, or transferring Plaintiff, and/or to refrain from giving Defendant's unlawful actions legal effect, should not result in any conceivable financial damages to Defendants.

**V.    CONCLUSION AND PRAYER FOR RELIEF**

For all the above reasons, this Court should find that Plaintiff warrants a temporary restraining order and a preliminary injunction preserving the status quo *before* the SEVIS terminations.

Specifically, Plaintiff requests this Court to enter the following findings and orders, pursuant to Rule 65, Fed.R.Civ.P, and 5 U.S.C. § 705:

A) That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to preserve the status quo of Plaintiff's valid international student status that authorizes them to continue pursuing their studies and authorized student employment, which includes the ability to seek the concomitant benefits of that valid status such as the legal eligibility to apply for Optional Practical Training, Curricular Practical Training, or a change of status to another non-immigrant visa status, while this litigation remains pending;

B) That prohibitive injunctive relief, through the issuance of a temporary restraining order, is also necessary to prevent Defendants from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings;

C) That, under the circumstances of this case, it is proper to waive the requirement that Plaintiff give an amount of security in connection with the issuance of an injunctive order; and

D) That, following subsequent briefing and argument on the issues, it is appropriate to order mandatory injunctive relief, through the issuance of a preliminary injunction, to prevent the damages described above, and to vacate and set aside the termination of their SEVIS record, and to reinstate or reissue their I-20 form, and work authorization; and

E) To the extent that ICE claims in the course of this litigation that SEVIS termination does not render a student out of status or unlawfully present, that they be ordered to

immediately issue public-facing guidance to the public in general, employers who

employ students on OPT specifically, and DSOs at Universities and Colleges

specifically, that they should take no adverse action against students based on

SEVIS termination for actions that do not warrant termination under the governing

regulations and law.

Dated: April 23, 2025                          Respectfully submitted,

                                                 s/ Jeff Joseph

                                               Jeff Joseph
                                               Berry Appleman & Leiden
                                               2400 N. Glenville Drive
                                               Richardson, TX  75082
                                               (720) 273-4647
                                               *Pro hac vice pending*

                                               Gregory P. Copeland
                                               Law Office of G P Copeland
                                               6565 Spring Brook Avenue,
                                               Suite 8, #195
                                               Rhinebeck, NY 12572
                                               Tel.: (845) 280-6446
                                               g@gpcopeland.com

30